ST. LOUIS & S. F. RY. CO. v. RYLEE.*

(Division A. Feb. 16, 1925.)

[102 So. 838. No. 24372.]

1. EVIDENCE. *Permitting proof of trespass by cattle committed over a
    period of several years by general statement as to amount of
    damage is error.*

    In a suit against a railroad company for damages caused by de-
    predations of cattle passing over defective cattle guards, it is
    error to permit the plaintiff to prove his case by general state-
    ment as to amount of damage done for a long period of time,
    where the damage alleged in the declaration is based upon the
    claim that the cattle committed depredations on pasture lands
    and crop lands for several years.

2. EVIDENCE. *Estimates of witnesses as to damage are admissible; wit-
    nesses must state data upon which estimates of damage are based.*

    While mathematical certainty is not required in such cases and
    estimates are admissible, but the witness must state the *data* up-
    on which the estimate is based, and then the court and jury may
    form a conclusion as to the accuracy or inaccuracy of a state-
    of the witness.

---

*Headnotes 1. Evidence, 22 C. J., section 598; 2. Evidence, 22 C. J.,
section 599.

APPEAL from circuit court of Marshall county.
HON. THOS. E. PEGRAM, Judge.

Action by Thomas 'Rylee against the St. Louis & San
Francisco Railway Company. From judgment for plain-
tiff, defendant appeals. Reversed and remanded.

*L. A. Smith,* for appellant.

The only proof of damages was a guess by Mr. John Rylee, son of appellee, of an annual damage of five hundred dollars, and another guess by Byrd Marmon, a colored man, of an aggregate damage for the period of five hundred dollars. Yet the testimony of these two witnesses, considerably disagreeing with each other, both concededly making guesses, is the sole evidence by which the case, so far as damages go, was submitted to the jury. This surely cannot be said to measure up to the responsibility put upon appellee of carrying the burden of proving his case by a preponderance of the evidence, and surely offered no guide or measure of damages whatever, to the jury.

The method of proving the actual damages in this case without giving any evidence as to how many acres were in cultivation, how many and what different kinds of crops were planted, and about how many pounds of cotton, or bushels of corn, as the case might have been, were destroyed; about how many cattle and stock were pastured there each year by appellant, not by appellant and his tenants, because the tenants are not suing here, and about what such pasturage is charged for generally in that country, per head, violates the rule laid down by our court in *Y. & M. V. R. R. Co.* v. *Hubbard,* 85 Miss. 480, 37 So. 1011. In this case the jury had no statements of detail from which they could calculate anything, and there is no proof of the *quantum* of damages, and there is a substantial and material difference between an estimate and a guess, and a large difference between a gross guess of the *quantum* of the damages and a detailed statement of all the facts and the circumstances so that the jury may base an estimate thereon. Therefore, we say that appellee has not proven any damages.

*Wall Doxey,* for appellee.

The facts disclosed by this record are plain and clear. It is not denied that appellee was damaged as was testi-

fied to by Mr. John Rylee, appellee's son. Appellee at
the time of this trial was very ill and was therefore un-
able to testify. Byrd Marmon testified as to appellee's
damage. All the disinterested witnesses explained the
facts, circumstances, and conditions from which any jury
or any court could not help but see and know that ap-
pellee had suffered and had been caused, by appellant's
failure to construct and maintain the proper, suitable,
and necessary cattle guards on its right of way, great
damage. The record shows appellant knew all this.
Nothing did appellant do to relieve the situation. In the
Spring of 1923 appellant made some slight changes, con-
clusively showing they knew something should be done
to remedy the situation. But the court by its ruling lim-
ited appellee's right of action from January, 1918, to
the date of the filing of the declaration, July, 1921.

McGowan, J., delivered the opinion of the court.

Thomas Rylee filed his declaration in the circuit court
of Marshall county against the defendant, the railroad
company, charging that the defendant had negligently
constructed cattle guards which were so defectively con-
structed as to permit persons as well as cattle to pass
to and fro at will; that his lands are located on either
side of the defendant railroad's track; and further
charges that they unlawfully, wrongfully, and negligent-
ly failed and refused to construct and maintain the nec-
essary stock gaps or cattle guards of sufficient length,
character, and type at the places where the railroad track
passes through plaintiff's land, suing for the statutory
penalty and damages in the sum of five hundred dollars.
Subsequently plaintiff amended his declaration and sued
for the statutory penalty of two hundred fifty dollars
and for five hundred dollars for damage to crops and pas-
ture lands on account of the negligent and defective con-
struction of the cattle guards. Issue being joined, the
cause was submitted to a jury, and the court perempto-
rily instructed the jury to find for the plaintiff two hun-

dred fifty dollars as a penalty and submitting the question of damages to the crops and pasture lands to the jury.

There was evidence on behalf of the railroad company that these stock gaps were constructed in a scientific manner, but there appears to be no contradiction that the stock gaps were not reasonably effective to keep out stock, and that this was known for a long time to the agents of the company. We think the peremptory instruction as to the statutory penalty was proper; and while there are numerous questions argued in the brief of counsel, we shall notice but one point. The jury found, in addition to the statutory penalty, the sum of two hundred fifty dollars damages to the crops, farm lands, and pasture lands of the plaintiff. .

The manner in which the proof was submitted to the jury was by permitting the witnesses to say in lump, the amount of damages the plaintiff had sustained on account of the depredations of cattle upon the plaintiff's lands, without any details as to how the damage arose, without any estimate as to the acreage planted in crops, and as to how many acres were in pasture land, and as to the years in which the damage accrued.

John Rylee, the son of the plaintiff, was the main witness, and we copy from the record his testimony on this point:

"Q. Now, Mr. Rylee, this condition as you have described here (referring to the cattle guards and defective condition thereof), what damage, if any, does it cause the property of Thomas Rylee and his rights to the peaceful and enjoyable possession of it? A. It practically turns out about five hundred or five hundred fifty acres of bottom land, hay field, and cane in the winter time that cannot be used with any safety.

"Q. Cannot be used for what purpose? A. For stock or pasture.

"Q. For what other purpose can it be used? A. It can be used for farming and take a chance of stock coming in on it.

"Q. To what extent have these premises been damaged, Mr. Rylee, and state the nature of it, and how it is brought about, and what is the result and approximate cause of the damage? A. By not being able to use that as a pasture and not being able to keep stock in and other stock out, I would say taking an average amount of stock my father had handled on the place in past years, five hundred dollars a year easily."

Three other witnesses testified to the same effect, and upon cross-examination declined to go into any details as to the conditions which existed with reference to these lands, but merely saying that the damage to the plaintiff's lands was from four hundred dollars to five hundred dollars a year.

The defendant railroad company asked for a peremptory instruction, which was refused by the court.

We think it was error to submit this case to the jury upon this uncertain proof as to the damage accruing to plaintiff. The witnesses, at most, expressed a mere opinion as to the amount of damages sustained, and did not give the jury or the court any basis upon which their estimates were made. No estimate as to the prospects of the crop when injured, or any detail of any specific injury at any specific time. Then, as to the pasture lands, there was no evidence as to the value of pasture lands in that community per month, or as to when the lands, had it not been for these defective stock guards, would have been susceptible of pasturage, if used for pasturage purposes, nor as to how many head of cattle were available that were deprived of pasturage.

It is true that in such cases witnesses cannot be expected to testify to a mathematical certainty, nor are they bound to rules of accuracy; but there are certain elements entering into the calculation which could be made by proof as to how the damage accrued; as to the number of acres in cultivation in a given year—the court and counsel having, by tacit consent, limited recovery to three years—and the state of cultivation. All these details could have been approximated by witnesses qualified

to testify as to the amount of damage sustained by the plaintiff, if he sustained damages.

This court laid down a very liberal rule in the case of *Yazoo & Mississippi Valley Railroad Co.* v. *Hubbard,* 85 Miss. 480, 37 So. 1011.

In the Hubbard Case the railroad objected to the proof as made where estimates of losses in bushels and bales, number of acres damaged and injured, the kind of crops planted, how much and how each was injured, time of injury, and the market value of products lost, giving the jury a clear idea upon which themselves to estimate fairly the value of the loss accruing to the plaintiff there.

Mr. Justice TRULY, speaking for the court, after setting out the items testified to and estimates of witnesses, said:

"This testimony was accepted by the jury, and we think it ample to sustain a judgment for the amount which was allowed to stand in this case. Mathematical certainty as to the amount of damage suffered is not required in actions of tort of this character. The amount of damage inflicted by injury to, or destruction of, property is, at last, like the value of the property itself, 'only a question of estimation, varying as the individual judgments of men may differ.' . . . Damages must be certain both in their nature and the cause from which they proceed; but the amount in cases like the one here presented—where a crop has been partly destroyed while growing, and partly after maturity, but before gathering—must, from the very nature of things, be calculated from statements detailing to the jury the exact situation of affairs as they existed at the time of the injury or destruction."

And citing Sedgwick on Damages, p. 246, and Sutherland on Damages, and quoting therefrom.

In the instant case we think witnesses may be permitted to sum up and give the total of their estimates after they have given details which must be known to the witnesses before they would be qualified to make any estimate which would be of substantial value to another in passing upon a question of damage in a case like this.

We understand the rule to be that witnesses must testify to the facts upon which a jury may determine the amount of damage sustained. For aught we know, these so-called estimates were mere guesses—not expert testimony, and apparently not based upon facts within the witnesses' knowledge. If the guess, or estimate, was based upon facts within the knowledge of the witness, then before his estimate may become competent he must give the details and the facts upon which he bases the estimate.

We quote with approval from volume 2, Fourth Edition, Sutherland Damages, section 444:

"*Opinions as to Amount of Damages.*—Ordinarily a witness is not allowed to give his opinion of the amount of damages a party sustains from a given act or omission, because when he does so he includes the law as well as the fact. It is the duty of the jury to assess the damages according to the rule of law which it is the province of the court to lay down for their guidance; witnesses are allowed only to furnish the data from which the amount is arrived at, and where the injury consists of distinct elements it is not competent to ask a witness to make a general estimate, but he should be asked to estimate the specific items separately."

There was nothing so complicated about these farm and pasture lands that would prevent witnesses who had knowledge from giving the data from which damages, if any, could be fairly estimated by the jury. And in such case if the plaintiff fails to show the distinct elements of damage upon the separate items, it is error to refuse a peremptory instruction. In this case, however, it may be that the plaintiff upon another trial would be able to show data and details upon which their so-called estimates were based. The cause is therefore reversed and remanded.

*Reversed and remanded.*